UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP FRANCIS GRAZIDE, ) | 1:07-cv-00735 MJS HC |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT |
| ) | OF HABEAS CORPUS |
| v. ) | |
| ) | |
| LELAND McEWEN, Warden, ) | |
| ) | |
| Respondent. ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Leland McEwen, warden of Calipatria State Prison, is represented by Ivan P. Marrs, Esq. of the office of the Attorney General of California.

I.      **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Inyo, following his July 15, 2005 jury convictions for corporal injury to a cohabitant or a former cohabitant and battery. (Ct. Tr., Vol. 2 at 468-69.) Petitioner admitted the truth of prior strikes under California's "Three Strikes" law and was sentenced to serve a term of twenty-five years to life in state prison. (Id.; Lodged Doc. 4 at 2.)

Petitioner timely appealed to the California Court of Appeals, Fourth Appellate District (hereinafter "Fourth DCA"). On November 20, 2006, the judgment was affirmed in a reasoned

opinion. (Lodged Doc. 4.) Petitioner then filed a petition for review in the California Supreme Court. (Lodged Doc. 5.) On January 24, 2007, the petition was summarily denied. (Lodged Doc. 6.)

On May 5, 2010, Petitioner filed the instant federal habeas petition. (Pet., ECF No. 1.) In his petition, Petitioner raised eleven separate claims, but stated that he had only exhausted the first two claims. (Id.) On June 6, 2007, the Court ordered Petitioner to inform the Court whether he was going to withdraw the unexhausted claims and proceed with the exhausted claims or withdraw the entire petition. (Order, ECF No. 7.) In response, on July 6, 2007, Petitioner requested the Court stay his federal petition to allow Petitioner time to exhaust his state claims. (Resp., ECF No. 9.) Over a year later, on July 15, 2008, the Court granted Petitioner's request and stayed the case pending exhaustion. (Order Staying Case, ECF No. 10.) According to the order, Petitioner was to provide status reports every sixty says regarding his efforts to exhaust his claims in state court. (Id.) Petitioner did not file reports every two months as required; the Court twice ordered him to comply. (Orders to Report, ECF Nos. 16 and 18.)

Finally, on July 1, 2010, Petitioner notified the Court that he had exhausted all of his state remedies. (Notice, ECF No. 23.) Based on Petitioner's assertions that his state claims were exhausted, the Court vacated the stay on July 19, 2010, and directed Respondent to file a response to the Petition on July 20, 2010. (Order Vacating Stay, ECF No. 24, Order to Respond, ECF No. 25.)

On September 20, 2010, Respondent filed a motion to dismiss claims three through eleven of the petition. (Mot. To Dismiss, ECF No. 28.) In support of the motion to dismiss, Respondent lodged documents with the Court showing that during the time the case was stayed, Petitioner only filed one post-conviction collateral action, a petition for writ of habeas corpus filed in the Inyo County Superior Court. (Lodged Doc. 7.) The petition was denied on June 10, 2010. (Lodged Doc. 8.) On November 17, 2010, the Court granted the motion to dismiss, thereby dismissing claims three through eleven of the petition. (Order, ECF No. 33.)

On February 14, 2011, Respondent filed an answer to the petition. (Answer, ECF No.

39.) Petitioner did not file a response.

Accordingly, Petitioner raises two grounds for relief. First he asserts his rights were violated when the trial court failed to give a definition of the word "permanence" contained in the jury instructions. Second, Petitioner asserts that his constitutional rights were violated by the admission of his prior acts of domestic violence to show propensity to commit the offense. (Pet. at 5.)

## II.     FACTUAL BACKGROUND[1]

Doreena McCartney began living with defendant in his home in Bishop in December 2003. When she first moved in with defendant, Doreena had another boyfriend who abused her. Although she occasionally stayed at the other boyfriend's house and received mail at her stepfather's house, Doreena considered defendant's home to be her permanent residence, and she kept her belongings there. At times, Doreena would stay with the other boyfriend for several days. Her relationship with the other boyfriend ended on February 26, 2004. Beginning in March 2004, she and defendant began a monogamous sexual relationship, engaging in sexual intercourse almost daily. At first, Doreena stayed in defendant's spare bedroom where she kept her clothes. From March until June 2004, after her breakup with the other boyfriend, she slept in defendant's room. One neighbor confirmed that Doreena lived with defendant about four to five months and that she cooked and cleaned for him.

Doreena moved out of defendant's in June 2004. When defendant discovered that she was moving out, he grabbed her by the hair, and dragged her across the floor. On June 7, when Officer Sarah Trehanre came in contact with Doreena, the officer observed recent bruises on Doreena's forearms, as well as some abrasions.

On December 4, 2004, Doreena and defendant argued. Defendant punched Doreena in the face. She fell to the ground and defendant grabbed her by the hair and dragged her 20 to 25 feet into the kitchen. Doreena escaped and went next door to call 911.

Inyo County Sherriff's Deputy Mark Gutierrez responded to the call. The deputy noticed blood coming from Doreena's mouth, bruising on her chin, a cut on her lip, a scratch below one eye, and a cut on her finger. Doreena was crying and saying that defendant had punched her in the mouth. Defendant acknowledged that he and Doreena had gotten into a verbal altercation; however, he claimed that she had slipped and fallen near a wood stove. The neighbor next door testified that Doreena had lived at defendant's residence for four of five months and that the two were openly affectionate with each other.

Evidence of defendant's prior misconduct was introduced. In August 2004, defendant went to his cousin Kelly Vega's house, upset about the mail. He grabbed Kelly by the hair and dragged him around the yard, Defendant

---

[1] The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

admitted to knocking Kelly on the ground and dragging him by his ponytail.

Defendant testified in his own defense. According to defendant, on December 4, 2004, his friends were at his house using drugs. When they refused to share with Doreena, she became offended and slipped and fell as she was leaving. As she tried to stand up, she grabbed a wheelbarrow and fell over it. When the police arrived, defendant's friends left because they were either on probation or on parole.

Defendant testified the Doreena had lived at his house only from March until May 2004, and she stayed only sporadically. Defendant regarded her as a "roommate." He estimated that they had sexual relations less than 10 times. He denied that they were in an exclusive relationship. Instead, he claimed that Doreena was seeing other men.

A deputy of the Inyo County Sherriff's Department testified that on February 26, 2004, he arrested Doreena for public intoxication. She was bloody. She claimed that her brother had beaten her up. Later, she changed her story and said that it was her boyfriend who had beaten her up. While in the back of the patrol car, Doreena attempted to kick out the car's windows, and subsequently, she kicked the deputy in the chest. At the time of the arrest, Doreena gave her other boyfriend's address as her own.

Paul Andreas testified that sometime between April 29 and June 3, 2004, Doreena invited him back to defendant's house to have sexual relations with her. She said that she had her own room in his house and that he did not mind if Paul spent the night. Uncomfortable with this arrangement, Paul suggested the Doreena stay over at his house. She did.

In rebuttal of defendant's evidence, an emergency technician testified that among Doreena's injuries on the night of the assault, he noticed several bald spots in which she was missing clumps of hair.

Doreena denied having sex with Paul as he had testified, or having fallen down the step as defendant had testified. However, she acknowledge the Paul was her exboyfriend. She testified that while she was unemployed, defendant had purchased her shoes, clothing and toilet items. Finally, Doreena described another unreported assault in which defendant backhanded her, then choked her until she passed out.

Deputy Gutierrez testified that defendant and Paul were housed in adjoining cells during trial.

(Lodged Doc. 4 at 2-5.)

### III.    DISCUSSION

####       A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Inyo County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

#### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930,

953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

    2.  Review of State Decisions

 "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id.  To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require

that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

**IV.    REVIEW OF PETITION**

    A.    **Ground One - The Trial Court's Failure to Clarify Jury Instruction**

Petitioner claims, as he did on direct appeal, that the trial judge failed to provide further instructions when a jury member requested clarification of the meaning of the jury instructions. (Pet. at 6.) Petitioner alleges that the "failure to provide additional guidance is prejudicial error." (Id.)

        1.    Factual Background

The trial court instructed the jury on corporal injury as follows:

> The defendant is accused in Case No. 04-37691 of having violated section 273.5, subdivision a, of the Penal Code, a crime. Every person who inflicts upon a person who is his or her former spouse or former cohabitant corporal injury resulting in a traumatic condition is guilty of a violation of section 273.5, subdivision a, of the Penal Code, a crime.
>
> Corporal injury means bodily injury. The word "willfully" as used in this instruction means a purpose or willingness to commit the act that results in corporal injury. The word "inflicts" as used in this instruction means that the corporal injury results from a direct application of force by the perpetrator on the victim.
>
> A traumatic condition is a condition of the body such as a wound or external or internal injury, whether of a minor or serious nature, caused by physical force.
>
> *Cohabiting means unrelated persons living together in a substantial relationship, one shown at least by permanence and sexual or amorous intimacy.*
>
> *Permanence does not require exclusivity in either the relationship or the living arrangement. A person may cohabit simultaneously with two or more people at different locations.*
>
> Holding oneself out to be husband or wife of the person with whom one is cohabiting is not required. In order to prove this crime evidence of the following elements must be proved: A person willfully inflicted bodily injury upon

his or her former spouse, a former cohabitant or the mother or father of his or her child and the bodily injury resulted in a traumatic condition.

(Rep. Tr. Vol. 3 at 740-741, italics added.)

Following the start of deliberations, a juror sent a note to the court that read, "Definition of permanence states what the law does not require – Is there a definition of what it does require?" (Ct. Tr. Vol. 2 at 344.) The court responded in writing on the note, stating "No, there isn't." (Id.)

### 2. Determination of the State Court

In the last reasoned decision, the Fourth DCA explained that it is the duty of the trial court to help the jury to understand the legal principles the jury is asked to apply. (Lodged Doc. 4 at 7.) However, the Fourth DCA further explained that a court need not always elaborate on the standard jury instructions. When the jury instructions are full and complete, the court has discretion on what further explanation, if any, should be given. (Id.) The Fourth DCA held the instructions were sufficient and that Petitioner's assertion that the jury need be instructed that permanence requires a substantial ongoing relationship would have only confused as the jury instructions already required a substantial ongoing relationship. (Id. at 8-9.)

### 3. Analysis

A claim of instructional error does not raise a cognizable federal claim, unless the error "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 71-72, (1991); see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). The issue must be considered in the context of the instructions and the trial record as a whole. Estelle, 502 U.S. at 72. In the case of an ambiguous instruction, the relevant question is whether there is a reasonable likelihood that the jury applied the challenged instruction in a manner that violates the Constitution. Estelle, 502 U.S. at 72 (citing Boyde v. California, 494 U.S. 370, 380 (1990)). If an error is found, relief is only available if the error had a substantial and injurious effect or influence in determining

the jury's verdict. Brecht, 507 U.S. at 637.

With regard to jury questions, "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Bollenbach v. United States, 326 U.S. 607, 612-13 (1946); see also Weeks v. Angelone, 528 U.S. 225, 231 (2000). A jury is presumed to understand a judge's answer to a question. Weeks, 528 U.S. at 234; but see United States v. Frega, 179 F.3d 793, 808-11 (9th Cir. 1999) (trial judge's confusing response to jury's questions raised possibility that verdict was based on conduct legally inadequate to support conviction). In Weeks, the United States Supreme Court "noted that the original instruction was correct and that the judge directed the jury to the precise paragraph that answered the question clearly. This was sufficient to pass constitutional muster..." Beardslee v. Woodford, 358 F.3d 560, 574-75 (9th Cir. 2004) (citing Weeks, 528 U.S. at 234). Cf. Beardslee v. Woodford, 358 F.3d at 575 (harmless due process violation occurred when, in responding to jury's request for clarification, court refused to give clarification and informed that no clarifying instruction would be given).

Here, the state appellate court concluded that the trial court's response to the jury's question about permanence was acceptable as the instruction accurately conveyed to the jury the state of the law. (Lodged Doc. 4 at 8.) The jury instructions describe the requirements of finding Petitioner guilty of inflicting corporal injury to a spouse or cohabitant. The jury instruction explained that cohabitating meant unrelated persons living together in a substantial relationship shown by permanence and sexual or amorous intimacy. The instruction further described that permanence did not require exclusivity with regard to the relationship.

It is of significant note that the term in question is not an element of the offense, but a term describing an element of the offense. Permanence was used, along with other terms, to describe whether the individuals were living together in a substantial relationship. The individuals were required to be in a substantial relationship to be cohabitating, which, in turn, was an element of the offense. Accordingly, the term permanence was used, in the context of several other descriptive terms, to describe an element of the offense.

From the context of the jury instructions as a whole, Petitioner cannot show that the

failure to provide further instructions so infected the entire trial that conviction violated due process. The jury found Petitioner and the victim were cohabitating based on evidence that the victim was residing with Petitioner for many months and involved in a romantic relationship with Petitioner. Accordingly, there is no indication that the jury applied any of the instructions in an unconstitutional manner. It is further presumed that the jury followed their instructions. See generally Greer v. Miller, 483 U.S. 756, 766 (1987). Pure speculation that the jury might have misunderstood or misapplied instructions will not suffice for habeas corpus relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations lacking in factual support do not provide a sufficient basis for habeas corpus relief.).

For all these reasons, the state court's finding of no prejudice is consistent with the Brecht harmless error analysis which must be applied on federal habeas corpus review. 507 U.S. at 637. Petitioner is not entitled to relief for this claim.

**B.    Ground Two - Use of Prior Acts Evidence to Show Propensity**

Petitioner claims that his due process rights were violated by the admission of his prior acts of domestic violence to infer that Petitioner committed the acts of domestic violence in the present matter. (Pet. at 6.)

1.    Factual Background

The trial court granted the People's in limine motion to introduce evidence of uncharged acts of domestic violence under California Evidence Code section 1109. (Ct. Tr. Vol. 1 at 184-193; 224.) Specifically, the court granted the motion to allow evidence of past acts of violence against the victim and another individual. (Id.) During trial, the victim testified that on two previous occasions, Petitioner assaulted her. (Rep. Tr. Vol. 2-3 at 352-54, 665-666.) On one occasion, Petitioner grabbed the victim by the hair and dragged her from the bathroom, down a step and across the floor. (Id. at 352-53.) On a separate occasion, Petitioner "backhanded" her, got on top of her, and choked her until she lost consciousness. (Id. at 665-666.) After the victim testified to the prior acts of domestic violence, the trial court instructed the jury with California Criminal Jury Instruction No. 2.50.02 as follows:

> Ladies and gentlemen of the jury, before I interrupted the testimony to discuss certain legal issues with counsel, the witness Doreena McCartney was giving testimony relating to an incident that occurred in June of 2004 where she testified that she was assaulted by the defendant.
>
> The offense charged in the Information alleges a commission date of the of the offense of Penal Code section 273.5 on December 4th of 2004. So it is important that you understand that the testimony being offered with regard to anything that might have happened in June of 2004 pertains to an uncharged offense. And in that regard I am going to give you an instruction as to the law that you are to apply in evaluating facts relating to that uncharged offense.
>
> Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in this case.
>
> ...
>
> If you find that the defendant committed a prior offense involving domestic violence, you may but are not required to, infer that the defendant had a disposition to commit another offense involving domestic violence.
>
> If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused.
>
> However, if you find by a preponderance of the evidence that the defendant committed a prior crime involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offense.
>
> If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. Unless you are otherwise instructed you must not consider this evidence for any other purpose.

(Rep. Tr. Vol. 2 at 358-60.)

### 2. Determination of the State Court

In the last reasoned decision the Fourth DCA explained that in a case regarding propensity evidence for child molestation, the California Supreme Court held that a similar propensity based on prior act instructions were upheld as constitutional. (Lodged Doc. 4 at 20-22, citing People v. Falsetta 21 Cal.4th 903 (1999) and People v. Reliford 29 Cal.4th 1007 (2003).)

///

///

### 3. Analysis

The United States Supreme Court has left open the question of whether admission of propensity evidence, such as evidence of prior crimes, violates due process. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) (declining to rule on constitutionality of propensity evidence). Based on the Supreme Court's reservation of this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established as required by AEDPA. See Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni); see, e.g., Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law).

AEDPA dictates that a district court may not grant habeas relief unless the state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d)(1). Consequently, in the absence of Supreme Court precedent stating the admission of evidence of prior acts violates due process, Petitioner cannot satisfy this requirement. See Alberni, 458 F.3d at 866-67.

The California Court of Appeal decision denying this claim was not contrary to clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V. CONCLUSION

Petitioner has not shown that he is entitled to relief with regard to the two remaining claims in his petition. Accordingly, the petition for writ of habeas corpus is DENIED with prejudice.

## VI. ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice; and

2. The Court DECLINES to issue a Certificate of Appealability. 28 U.S.C. §

2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) In order to obtain a COA, petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. at 484.  In the present case, jurists of reason would not find debatable whether the petition was properly dismissed with prejudice. Petitioner has not made the required substantial showing of the denial of a constitutional right.

IT IS SO ORDERED.

Dated:   July 25, 2011              /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE